David P. Billings (11510)
FABIAN VANCOTT
215 South State Street, Suite 1200
Salt Lake City, Utah 84111-2323
Telephone: (801) 531-8900
Facsimile: (801) 532-3370
dbillings@fabianvancott.com
*Attorney for Plaintiffs*

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UTAH DEMOCRATIC PARTY and JOSHUA HARDY,<br><br>Plaintiff,<br><br>v.<br><br>DIEDRE M. HENDERSON, in her Official Capacity as Lieutenant Governor of Utah, and JOEL FERRY, individually and in his Official Capacity as acting director of the Utah Department of Natural Resources,<br><br>Defendants. | **COMPLAINT**<br><br>Case No.  2:22-cv-00581-DPB<br><br>Magistrate Judge Dustin B. Pead |

The Utah Democratic Party (**"UDP"**) and Joshua Hardy (**"Hardy"**) allege against Lieutenant Governor Diedre M. Henderson (the "**LG**") and Joel Ferry (collectively, **"Defendants"**) as follows:

## PARTIES AND JURISDICTION

1. Plaintiff UDP is an unincorporated association established under Title 20A of the Utah Code, with its principal place of business in Salt Lake County, Utah.

2. UDP has members throughout the state, including in House District 1, the district at issue here, whose votes are diluted and rendered ineffective, whose voices are muted, and whose interests are impaired because of Defendants' actions and inactions.

3. To support its mission to elect its members to elective partisan federal, state, and local offices, UDP engages in political speech via activities including press conferences, press releases, fundraising, get-out-the-vote and voter mobilization efforts throughout Utah including, voter registration, canvasing, political advertising, phone banking, text banking, and the like.

4. Defendants' actions and inactions substantially impairs UDP's activities by muting and/or diluting the voices and political power of its members in House District 1 and throughout the state by limiting UDP's ability to strategically deploy funding to state legislative races; recruit volunteers throughout the state; and engage in voter mobilization efforts.

5. Defendants' actions and inactions make the representative to be selected by the Utah Republican Party (**"URP"**) less accountable and reduce voter interest in House District 1 race in 2022.

6. Plaintiff Joshua Hardy is a UDP member and the UDP candidate for House District 1 and is a registered voter in District 1.

7. Defendant Diedre M. Henderson is the Lieutenant Governor of Utah. In that capacity, the LG is also the chief election officer of Utah pursuant to Utah Code § 67-1a-2(2)(a) and is statutorily required to promptly correct any errors on the ballot without delay pursuant to Utah Code § 20A-5-405(3)(a).

8. Defendant Henderson is responsible for the administration of Utah's election process, including overseeing all voter registration activities, the compliance of political parties

with applicable law, and coordinating "with local, state, and federal officials to ensure compliance with state and federal election laws." Utah Code § 20A-2-300.6(2)(b).

9. Defendant Joel Ferry is the current acting director of the Utah Department of Natural Resources (**"DNR"**) and the Republican nominee for House District 1.

10. As acting director of DNR, Defendant Ferry is the chief administrative officer of the department and is an executive officer. *See* Utah Code § 79-2-202.

## JURISDICTION AND VENUE

11. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, in that this complaint presents federal questions involving federal law and constitutionally protected rights.

12. Declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202.

13. State law questions are appropriate in this Court as supplemental claims over which this Court has jurisdiction pursuant to 28 U.S.C. § 1367.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

15. This case is brought pursuant to the First, Fifth, and Fourteenth Amendments to the United States Constitution; article I secs. 1, 2, 7, 17, and 24, article IV sec. 2, article V sec. 1, and article VI sec. 6 of the Utah Constitution, and 42 U.S.C. § 1983 *et seq.*, for declaratory and injunctive relief, for the purpose of protecting and preserving the important associational rights, free speech, due process rights, equal protection rights, and political power and rights of voters in District 1 and of the UDP and its members in how the party supports its nominees for elected office.

## GENERAL ALLEGATIONS

16. In 2018, Joel Ferry received 73.7% of the vote for House District 1 while Joshua Hardy received 17.0% of the vote in the same race.

17. Ferry became a member of the legislative branch as Representative for District 1 in the Utah State House on January 1, 2019.

18. In 2020, Ferry ran for reelection to the House District 1 against Mr. Hardy's wife and captured over 79% of the vote. Ms. Hardy received 13.2% of the vote in the same race.

19. On February 28, 2022, Ferry submitted a declaration of candidacy as a Republican candidate for House District 1.

20. In April, Republican delegates renominated Ferry as Utah Republican Party ("**URP**")'s candidate for House District 1.

21. On June 24, 2022, Governor Cox appointed Ferry to the position of Director of the Department of Natural Resources (**"DNR"**).

22. Ferry did not resign from his legislative position or remove his name from the 2022 general election ballot prior to accepting his appointment as Director of DNR.

*The LG's Decision to Side with Her Party Over Uniform Enforcement of the Law*

23. In July 2022, after local news raised the potential separation of powers violation, Defendants asserted that there was no conflict because Ferry resigned from committees directly relating to DNR and was not receiving compensation from his legislative role.

24. On August 17, 2022, the Plaintiffs sent a letter to Defendant Henderson and Ryan Cowley, Director of Elections, requesting that Ferry step down from one of the conflicting legislative or executive roles and be disqualified from appearing on the ballot. A true and correct copy of the August 17, 2022 letter is attached as **Exhibit 1** to the Declaration of Diane Lewis filed contemporaneously herewith.

25. On August 24, 2002, LG Henderson responded that there was "no statutory basis on which [she] may affirmatively disqualify a candidate" and asserted Mr. Ferry's position on the

4

ballot "entirely up to him." A true and correct copy of the August 24, 2002 letter is attached as **Exhibit 2** to the Declaration of Diane Lewis filed contemporaneously herewith.

*Ferry's Decision to Remain on the Ballot Despite DNR Appointment*

26. Upon information and belief, Ferry assumed the position as Acting Director on or about June 24, 2022.

27. On August 26, 2022, the Utah Senate Judiciary Committee unanimously gave Ferry's nomination as director of DNR a favorable recommendation.

28. Later that day, Ferry resigned from his position in the legislature. Upon information and belief, the Utah Senate will vote on Ferry's confirmation in late September 2022.

29. Gov. Cox has yet to appoint a replacement under Utah Code § 20A-1-503(2).

30. Despite his resignation, Ferry publicly stated he does not plan to remove his name from the ballot.

31. Ferry is currently the acting executive director of DNR.

32. Upon information and belief, Defendant Ferry's employment with DNR is his primary employment.

33. In 2021, DNR received significant amount of federal loans and grants and the executive director's salary consumed 17% of the total budget.

34. Upon information and belief, Ferry's salary is paid completely, directly or indirectly, by loans or grants made by the United States or a Federal agency within the meaning of 5 CFR § 151.121(c).

*Harm to Plaintiffs' Fundamental Rights by Defendants is Ongoing*

35. Given the results of the 2018 and 2020 elections, Ferry will almost certainly be reelected if included on the ballot despite being ineligible for to hold office in the legislative branch since becoming Acting Director of DNR.

36. If Ferry is reelected, he will again be ineligible to take office on January 1, 2023 without resigning as Director DNR.

37. Upon information and belief, Ferry plans to again resign if reelected to House District 1.

38. After such resignation, the Utah Republican Party ("**URP**"), rather than House District 1's voters, will pick his replacement.

39. Ferry's ineligibility to serve as Representative for House District 1 necessarily means that his inclusion on the ballot requires Joshua Hardy to campaign against a straw man candidate rather than the Republican candidate who will become Representative if elected.

40. Hardy, as a voter in District 1 who is not of the same political party as Ferry, will have his vote diluted and/or nullified when the URP submits its currently undisclosed choice to fill the vacancy created after Ferry again steps down as Representative for House District 1.

41. Because Ferry is a straw man candidate, the UDP is unable to strategically plan for their involvement in the House District 1 election.

42. In 1894, Utah adopted "[a]n Act to enable the people of Utah to form a constitution and State government, and to be admitted into the Union on an equal footing with the original states."

43. Known as the Utah Enabling Act, it stated that "The constitution shall be republican in form, and make no distinction in civil or political rights on account of race or color, except as

6

to Indians not taxed, and not to be repugnant to the Constitution of the United States and the principles of the Declaration of Independence." *Id.*

44. True to form, the Utah Constitution provides that "All political power is inherent in the people; and all free governments are founded on their authority for their equal protection and benefit, and they have the right to alter or reform their government as the public welfare may require." Utah Const. art. I, sec. 2.

45. Like its federal counterpart, the Utah Constitution has strict separation of powers between the three branches of government: "The powers of the government of the State of Utah shall be divided into three distinct departments, the Legislative, the Executive, and the Judicial; and no person charged with the exercise of powers properly belonging to one of these departments, shall exercise any functions appertaining to either of the others, except in the cases herein expressly directed or permitted." Utah Const. art. V, sec. 1.

46. To ensure this separation, the Utah Constitution explicitly prohibits a member of the executive branch from being a member of the legislative branch. "No person holding any public office of profit or trust under authority of . . . this State, shall be a member of the Legislature" Utah Const. art. VI, sec. 6.

47. The position of executive director of DNR is a public office of profit or trust under authority of the State of Utah within the meaning of article VI, section 6 of the Utah Constitution.

48. The right to vote and have that vote count equally is a fundamental right under the United States and Utah Constitutions.

49. The freedom of association is a fundamental right under the United States and Utah Constitutions.

7

50. The freedom of speech is a fundamental right under the United States and Utah Constitutions.

51. Equal Protection is a fundamental right under the United States and Utah Constitutions.

52. Due Process of law, both substantive and procedural, are fundamental rights under the United States and Utah Constitutions.

### FIRST CAUSE OF ACTION
*Violation of Civil Rights — 42 U.S.C. § 1983*
*Claim for Damages, Declaratory and Injunctive Relief Against Defendants*

53. Plaintiffs hereby reallege the above paragraphs as if fully set forth herein.

54. This claim for relief arises under the First, Fifth, and Fourteenth Amendments to the United States Constitution, Articles I, IV, and VI of the Utah Constitution, and 42 U.S.C. § 1983 *et seq*. Plaintiffs seek damages, declaratory, injunctive, and prospective relief on behalf of itself and its members.

55. Defendants are statutorily and constitutionally required to apply the law equally and not to favor URP, the political party which they are personally members of, over an opposing political party.

56. Defendants have ignored Ferry's violation of the Utah Constitution both in previous holding positions within the legislative and executive branches, and running for legislative office while holding an office of profit or trust within the executive branch.

57. Defendants have also ignored Ferry's violation of the Hatch Act, 5 U.S.C. §§ 1501-1508, 5 CFR § 151.121I, the "little Hatch Act," Utah Code § 63A-17-904(4)(b) and Utah Admin. Code R477-9-4(1)(b), in concurrently running for partisan political office while administering and being paid completely, directly or indirectly with federal funds as acting director of DNR.

8

58. Defendant Henderson has derogated her statutory duty as chief election officer by failing to enforce the election laws in response to these violations.

59. Defendant Henderson's failure to enforce constitutional and statutory requirements violates the Equal Protection and Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution and infringes upon District 1 voters' and UDP's exercise of their First Amendment rights as result.

60. Article I, section 1 of the Utah Constitution provides: "All persons have the inherent and inalienable right to enjoy and defend their lives and liberties; to acquire, possess and protect property; to worship according to the dictates of their consciences; to assemble peaceably, protest against wrongs, and petition for redress of grievances; to communicate freely their thoughts and opinions, being responsible for the abuse of that right." Utah Const. art. I, sec. 1.

61. Article I, section 15 of the Utah Constitution provides: "No law shall be passed to abridge or restrain the freedom of speech or of the press. In all criminal prosecutions for libel the truth may be given in evidence to the jury; and if it shall appear to the jury that the matter charged as libelous is true, and was published with good motives, and for justifiable ends, the party shall be acquitted; and the jury shall have the right to determine the law and the fact." Utah Const. art. I, sec. 15.

62. Defendant Ferry's inclusion on the ballot and Defendant Henderson's failure to remove him from the allot violates Article I, sections 1 and 15 of the Utah Constitution and harms Plaintiffs as a result.

63. Article I, section 2 of the Utah Constitution provides: "All political power is inherent in the people; and all free governments are founded on their authority for their equal

protection and benefit, and they have the right to alter or reform their government as the public welfare may require." Utah Const. art. I, sec. 2.

64. Article I, section 24 provides: "All laws of a general nature shall have uniform operation." Utah Const. art. I, sec. 24.

65. Defendant Ferry's inclusion on the ballot and Defendant Henderson's failure to remove him from the ballot violates Article I, sections 2 and 24 of the Utah Constitution and harms Plaintiffs as a result.

66. Article I, section 7 of the Utah Constitution provides: "No person shall be deprived of life, liberty or property, without due process of law." Utah Const. art. I, sec. 7.

67. Defendant Ferry's inclusion on the ballot and Defendant Henderson's failure to remove him from the ballot violates Article I, section 7 of the Utah Constitution and harms Plaintiffs as a result.

68. Article I, Section 17 of the Utah Constitution protects Utahns' right to free elections. Article I, Section 17 states: "All elections shall be free, and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage. Soldiers, in time of war, may vote at their post of duty, in or out of the State, under regulations to be prescribed by law." Utah Const. art. I, sec. 17.[1]

69. Defendant Ferry's inclusion on the ballot and Defendant Henderson's failure to remove him from the ballot violates Article I, Section 17 of the Utah Constitution and harms Plaintiffs as a result.

70. Article IV of the Utah Constitution affirmatively protects Utahns' right to vote.

---

[1] While Utah's Free Elections Clause has no counterpart in the U.S. Constitution, it is materially indistinguishable with provisions in numerous other state constitutions on which Utah's founders based the Utah Constitution.

71. Section 1 of Article IV states: "The rights of citizens of the State of Utah to vote and hold office shall not be denied or abridged on account of sex. Both male and female citizens of this State shall enjoy equally all civil, political and religious rights and privileges." Utah Const. art. VI, sec. 1.

72. Section 2 of Article VI states: "Every citizen of the United States, eighteen years of age or over, who makes proper proof of residence in this state for thirty days next preceding any election, or for such other period as required by law, shall be entitled to vote in the election." Utah Const. art. VI, sec. 2.

73. Article I, section 2 and Article VI, section 1 of the Utah Constitution guarantee that all governmental "power derives from the people, who can delegate it to representative instruments which they create," but "the people are the ultimate source of sovereign power." *Carter v. Lehi City,* 2012 UT 2, ¶¶ 25, 30, 269 P.3d 141, 149–50 (internal citation and quotation omitted).

74. Defendant Ferry's inclusion on the ballot and Defendant Henderson's failure to remove him from the ballot violates Article IV, sections 1 and 2 of the Utah Constitution and harms Plaintiffs as a result.

75. Defendant Ferry's failure to remove himself from the November 2022 ballot violates Article V, section 1 of the Utah Constitution and harms Plaintiffs as a result.

76. Defendant Ferry's likely reelection violates Article VI, section 6 of the Utah Constitution and harms Plaintiffs as a result.

77. Accordingly, Plaintiffs are entitled to a temporary and thereafter permanent injunction enforcing those constitutional rights, and to an award of reasonable attorneys' fees and costs in this action.

**SECOND CAUSE OF ACTION**
*Declaratory Judgment Against Defendants*

78. Plaintiffs hereby reallege the above paragraphs as if fully set forth herein.

79. Based on the foregoing, an actual ongoing controversy relating to the legal rights and duties of Defendants exists with respect to the constitutionality of Defendant Ferry's inclusion on the November ballot, and whether Defendant Henderson is required to remove Defendant Ferry's name from the ballot.

80. Because of the dispute that has arisen, Plaintiffs seek a judicial declaration pursuant to 28 U.S.C. § 2201(a) and Rule 57 of the Federal Rules of Civil Procedure that UDP and Joshua Hardy are entitled to a declaratory judgment with respect to the following:

    a. Whether Defendant Henderson's failure to enforce the requirements for inclusion on the ballot, namely leaving the qualification determination to Defendant Ferry, and Defendant Ferry's failure to remove his name from the ballot flagrantly flaunt the requirements under the Hatch Act, Utah's Little Hatch Act, and Utah's Election Code and infringe on the Fifth and Fourteenth Amendment rights of UDP and the voters of District 1 to Equal Protection and Due Process of law;

    b. Whether Defendant Henderson's failure to enforce the requirements for inclusion on the ballot, namely leaving the qualification determination to Defendant Ferry, and Defendant Ferry's failure to remove his name from the ballot flagrantly flaunt the requirements under the Hatch Act, Utah's Little Hatch Act, and Utah's Election Code and infringe on the First Amendment rights of UDP and Plaintiff Hardy to engage in political association;

    c. Whether Defendant Henderson's failure to enforce the requirements for inclusion on the ballot, namely leaving the qualification determination to Defendant Ferry,

and Defendant Ferry's failure to remove his name from the ballot flagrantly flaunt the requirements under the Hatch Act, Utah's Little Hatch Act, and Utah's Election Code and infringe on UDP's and Plaintiff Hardy's rights of free speech and association under Article I, Sections 1 and 15 of the Utah Constitution;

   d. Whether Defendant Henderson's failure to enforce the requirements for inclusion on the ballot, namely leaving the qualification determination to Defendant Ferry, and Defendant Ferry's failure to remove his name from the ballot flagrantly flaunt the requirements under the Hatch Act, Utah's Little Hatch Act, and Utah's Election Code and infringe on UDP's and Plaintiff Hardy's rights under Article I, sections 2 and 24 of the Utah Constitution to the uniform operation and enforcement of the law;

   e. Whether Defendant Henderson's failure to enforce the requirements for inclusion on the ballot, namely leaving the qualification determination to Defendant Ferry, and Defendant Ferry's failure to remove his name from the ballot flagrantly flaunt the requirements under the Hatch Act, Utah's Little Hatch Act, and Utah's Election Code and infringe on UDP's and Plaintiff Hardy's rights under Article I, section 7 of the Utah Constitution to due process of law;

   f. Whether Defendant Henderson's failure to enforce the requirements for inclusion on the ballot, namely leaving the qualification determination to Defendant Ferry, and Defendant Ferry's failure to remove his name from the ballot flagrantly flaunt the requirements under the Hatch Act, Utah's Little Hatch Act, and Utah's Election Code and infringe on UDP's and Plaintiff Hardy's rights under Article I, section 17 of the Utah Constitution to free and fair elections;

      g.      Whether Defendant Henderson's failure to enforce the requirements for inclusion on the ballot, namely leaving the qualification determination to Defendant Ferry, and Defendant Ferry's failure to remove his name from the ballot flagrantly flaunt the requirements under the Hatch Act, Utah's Little Hatch Act, and Utah's Election Code and infringe on Plaintiff Hardy's right to vote under Article IV, section 2 of the Utah Constitution.

      h.      Whether Defendant Henderson's failure to enforce the requirements for inclusion on the ballot, namely leaving the qualification determination to Defendant Ferry, and Defendant Ferry's failure to remove his name from the ballot flagrantly flaunt the requirements under the Hatch Act, Utah's Little Hatch Act, and Utah's Election Code and infringe on Separation of Powers under Art. V, section 1 of the Utah Constitution;

      i.      Whether Defendant Henderson's failure to enforce the requirements for inclusion on the ballot, namely leaving the qualification determination to Defendant Ferry, and Defendant Ferry's failure to remove his name from the ballot flagrantly flaunt the requirements under the Hatch Act, Utah's Little Hatch Act, and Utah's Election Code and infringe on Separation of Powers under Art. VI, section 6 of the Utah Constitution.

      j.      Whether Defendant Henderson has the authority to remove Defendant Ferry from the ballot for failure to meet constitutional requirements under Utah Code § 20A-1-501.

      k.      Whether Utah Code § 20A-1-501 is unconstitutional as applied to the parties under the facts of this case, and enforcement thereof with respect to Mr. Ferry if the LG is correct in concluding Utah Code § 20A-1-501 prohibits the removal of Ferry's name from the HD-1 ballot, despite his ineligibility under the Hatch Act, Utah Const. Art. VI, sec. 6,

the "little Hatch Act," Utah Code § 63A-17-904(4)(b), and/or Utah Admin. Code R477-9-4(1)(b).

81. Pursuant to 42 U.S.C. § 1983 *et. seq.*, Plaintiffs are entitled to a declaratory judgment declaring that these constitutional rights have been violated, a temporary and thereafter permanent injunction enforcing those rights, and to an award of reasonable attorneys' fees and costs in this action.

**WHEREFORE**, Plaintiffs request damages and equitable relief against Defendants as follows:

1. Enter a declaration, pursuant to 28 U.S.C. § 2201(a) and Rule 57 of the Federal Rules of Civil Procedure that Ferry is ineligible to run as URP's nominee for HD-1 under of the Hatch Act, 5 U.S.C. §§ 1501-1508, Utah Const. Art. VI, sec. 6, the "little Hatch Act," Utah Code § 63A-17-904(4)(b), and Utah Admin. Code R477-9-4(1)(b);

2. Enter an order finding that the LG has failed to enforce state law with respect to Defendant Ferry's inclusion on the ballot and concluding that Defendants have thereby violated Plaintiffs' rights under the U.S. and Utah Constitutions;

3. Enter a declaration, pursuant to 42 U.S.C. § 1983, that Defendants' unequal application of Utah Election Code to Defendant Ferry violated Plaintiffs' rights under the United States and Utah Constitutions;

4. Enter preliminary and permanent injunctions enjoining the LG from printing or publishing any official ballot with Defendant Ferry's name on it as URP's nominee for House District 1;

5. To the extent that Utah Code § 20A-1-501 prohibits the removal of Mr. Ferry's name from the HD-1 ballot due his ineligibility under the Hatch Act, Utah Const. Art. VI, sec. 6,

the "little Hatch Act," Utah Code § 63A-17-904(4)(b), and/or Utah Admin. Code R477-9-4(1)(b), enter an order finding that Utah Code § 20A-1-501 is unconstitutional as applied as to the parties under the facts of this case, and enforcement thereof with respect to Mr. Ferry is thereby enjoined.

6. Award Plaintiffs' costs, including reasonable attorneys' fees under 42 U.S.C. § 1988, and under other applicable law;

7. Award Plaintiffs damages, including costs of court and collections, in an amount to be proven at trial together with pre- and post-judgment interest as allowed by law until paid; and

8. Allow such other and further relief for Plaintiffs as the Court deems just and proper in this action.

DATED this 7th day of September, 2022

*/s/ David P. Billings*
DAVID P. BILLINGS
FabianVanCott
*Attorney for Plaintiffs*

Plaintiff's Address

Utah Democratic Party
825 North 300 West, Suite C400
Salt Lake City, Utah 84103