David P. Billings (UT # 11510)
FABIAN VANCOTT
215 South State Street, Suite 1200
Salt Lake City, UT 84111-2323
801-532-8900
dbillings@fabianvancott.com
*Attorneys for Utah Democratic Party and Joshua Hardy*

## IN THE UNITED STATES DISTICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UTAH DEMOCRATIC PARTY and JOSHUA HARDY,<br><br>Plaintiffs,<br><br>v.<br><br>DEIDRE M. HENDERSON, in her Official Capacity as Lieutenant Governor of Utah, and JOEL FERRY, individually and in his Official Capacity as Acting Director of the Utah Department of Natural Resources,<br><br>Defendants. | **DECLARATION OF DIANE LEWIS**<br><br><br>Case No. 2:22-cv-00581-DPB<br><br>Magistrate Judge Dustin B. Pead |

I, Diane Lewis, hereby declare as follows:

1.      I am over 18 years of age and have personal knowledge of all facts stated herein, and if called as a witness could and would testify competently to these facts.

2.      I am the Chair of Plaintiff Utah Democratic Party ("**UDP**"). Joshua Hardy and his wife Amber Hardy are members of UDP.

3.      Plaintiff UDP is an unincorporated association established under Title 20A of the Utah Code, with its principal place of business in Salt Lake County, Utah.

4.      In 2018, Joel Ferry received 73.7% of the vote for House District 1 while Joshua Hardy received 17.0% of the vote in the same race.

5.      Ferry became a member of legislative branch as Representative for District 1 in the Utah State House on January 1, 2019.

6.      In 2020, Ferry ran for reelection to the House District 1 against Mr. Hardy's wife and captured over 79% of the vote. Ms. Hardy received 13.2% of the vote in the same race.

7.      On February 28, 2022, Ferry submitted a declaration of candidacy as a candidate for House District 1 for Utah Republican Party ("**URP**").

8.      On June 24, 2022, Governor Cox appointed Ferry to the position of Director of the Department of Natural Resources (**"DNR"**).

9.      Ferry did not resign from his legislative position or remove his name from the 2022 general election ballot prior to accepting his appointment as Director of DNR.

_The LG's Decision to Side with Her Party Over Uniform Enforcement of the Law_

10.      In July 2022, after local news raised the potential separation of powers violation, Defendants Ferry and Utah Lieutenant Governor Diedre M. Henderson (the "**LG**") asserted that there was no conflict because Ferry resigned from committees directly relating to DNR and was not receiving compensation from his legislative role.

11.      On August 17, 2022, the Plaintiffs sent a letter to the LG and her Director of Elections Ryan Cowley, requesting that Ferry step down from one of the conflicting legislative or executive roles and be removed from the November 2022 ballot. A true and correct copy of the August 17, 2022 letter is attached hereto as **Exhibit #1**.

12.      On August 24, 2002, the LG responded that there was "no statutory basis on which [she] may affirmatively disqualify a candidate" and asserted Mr. Ferry's position on the ballot

2

"entirely up to him." A true and correct copy of the August 24, 2002 letter is attached hereto as **Exhibit #2**.

*Ferry's Decision to Remain on the Ballot Despite DNR Appointment*

13.     Upon information and belief, Ferry assumed the position as Acting Director on or about June 24, 2022.

14.     On August 26, 2022, the Utah Senate Judiciary Committee unanimously gave Ferry's nomination as director of DNR a favorable recommendation.

15.     Later that day, Ferry resigned from his position in the legislature.

16.     Upon information and belief, the Utah Senate will vote on Ferry's confirmation in late September 2022.

17.     Gov. Cox has yet to appoint a replacement under Utah Code § 20A-1-503(2).

18.     Despite his resignation, Ferry publicly stated he does not plan to remove his name from the ballot.

19.     Ferry is currently the acting executive director of DNR.

20.     Upon information and belief, Defendant Ferry's employment with DNR is his primary employment.

21.     In 2021, DNR received significant amount of federal loans and grants and the executive director's salary consumed 17% of the total budget.

22.     Upon information and belief, Ferry's salary is paid completely, directly or indirectly, by loans or grants made by the United States or a Federal agency within the meaning of 5 CFR § 151.121(c).

*Harm to Defendants' Fundamental Rights is Ongoing*

23.     Given the results of the 2018 and 2020 elections, Ferry will almost certainly be

reelected if included on the ballot despite being ineligible for to hold office in the legislative branch since becoming Acting Director of DNR.

24.     If Ferry is reelected, he will again be ineligible to take office on January 1, 2023 without resigning as Director DNR the conflicting roles of representing both the legislative and executive branches.

25.     Upon information and belief, Ferry plans to again resign if reelected to House District 1.

26.     After such resignation, URP delegates rather than House District 1's voters, will pick his replacement.

27.     Ferry's ineligibility to serve as Representative for House District 1 necessarily means that his inclusion on the ballot requires Joshua Hardy to campaign against a straw man candidate rather than the Republican candidate who will become Representative if elected.

28.     Hardy, as a voter in District 1 who is not of the same political party as Ferry, will have his vote diluted and/or nullified when the URP submits its currently undisclosed choice to fill the vacancy created after Ferry again steps down as Representative for House District 1.

29.     Because Ferry is a straw man candidate, the UDP is unable to strategically plan for their involvement in the House District 1 election.

30.     UDP has members throughout the state, including in House District 1, the district at issue here, whose votes are diluted and rendered ineffective, whose voices are muted, and whose interests are impaired because of Defendants' actions and inactions.

31.     To support its mission to elect its members to elective partisan federal, state, and local offices, UDP engages in political speech via activities including press conferences, press releases, fundraising, get-out-the-vote and voter mobilization efforts throughout Utah including,

voter registration, canvasing, political advertising, phone banking, text banking, and the like.

32.     Defendants' actions and inactions substantially impairs UDP's activities by muting and/or diluting the voices and political power of its members in House District 1 and throughout the state by limiting UDP's ability to strategically deploy funding to state legislative races; recruit volunteers throughout the state; and engage in voter mobilization efforts.

33.     I declare under penalty of perjury according to the laws of the State of Utah and the United States that the foregoing is true and correct to the best of my knowledge.


DATED September 7, 2022, in Oxon Hill, Maryland 20745


_Diane Lewis_
Diane Lewis