David P. Billings (11510)
FABIAN VANCOTT
215 South State Street, Suite 1200
Salt Lake City, Utah 84111-2323
Telephone: (801) 531-8900
Facsimile: (801) 532-3370
dbillings@fabianvancott.com
*Attorney for Plaintiffs*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UTAH DEMOCRATIC PARTY and JOSHUA HARDY,<br><br>    Plaintiffs,<br><br>v.<br><br>DIEDRE M. HENDERSON, in her Official Capacity as Lieutenant Governor of Utah, and JOEL FERRY, individually and in his Official Capacity as acting director of the Utah Department of Natural Resources,<br><br>    Defendants. | **RESPONSE TO ORDER TO SHOW CAUSE**<br><br>Case No. 2:22-cv-00581-JNP<br><br>Judge Jill N. Parrish |

Plaintiffs hereby respond to the Court's September 9, 2022 Order to Show Cause as follows:

The Order to Show Cause requested Plaintiffs show cause as to why this court "should exercise supplemental jurisdiction to hear Plaintiffs' claims made under state law, specifically those arising from Sec. 6, Utah Code § 63A-17-904(4)(b), Utah Admin. Code R477-9-4(1)(b), and UTAH CONST. art. I, §§ 1, 2, 7, 17, & 24, art. IV, § 2, art. V § 1, and art. VI § 6." Docket No. 11.

1

"Judicial economy and fairness result from retaining jurisdiction over mixed state and federal claims where 'The state and federal claims . . . derive from a common nucleus of operative fact.'" *Estate of Harshman v. Jackson Hole Mountain Resort*, 379 F.3d 1161, 1165 (10th Cir. 2004) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)). "By not forcing potential litigants either to avoid federal courts or to bifurcate their causes of action between state and federal courts, supplemental jurisdiction promotes the accessibility of federal courts as well as overall judicial economy." *Id.*

A Court may decline to exercise supplemental jurisdiction only if "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). If one of these factors is present, the district court may exercise discretion and decline supplemental jurisdiction. *See Mocek v. City of Albuquerque*, 813 F.3d 912, 935 (10th Cir. 2015). When exercising such discretion district courts must "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *King v. Fleming*, 899 F.3d 1140, 1154 (10th Cir. 2018). Conversely, "unless one of the conditions of 28 U.S.C. § 1367(c) exists, courts are not free to decline jurisdiction." *SWEPI, LP v. Mora County*, N.M., 81 F. Supp. 3d 1075, 1144 (D.N.M. 2015). Here, only the first, second, and fourth factors are potentially statutory bases that are possibly at issue.

### *The Complaint Does Not Raise Novel or Complex Issues of State Law*.

The mere fact that "certain issues involved in plaintiff's state law claims have been left unresolved by [state] courts does not make those issues novel or complex," *Martin v. Pub. Serv. Co. of Colo.,* No. 20-cv-00076-RBJ, 2020 WL 4193547, at *3 (D. Colo. July 21, 2020) (citation omitted). Rather "novelty requires that the legal issue in question, in the context of legal issues generally, be so unusual or difficult that analysis by a state court in the first instance is preferable." *The Arc of The Pikes Peak Region v. Nat'l Mentor Holdings, Inc.,* No. 10-CV-01144-REB-BNB, 2011 WL 1047222, at *2 (D. Colo. Mar. 18, 2011) (internal quotation marks omitted). As detailed below, this case does not raise a novel or complex issue of state law. Plaintiffs' motion demonstrates the state statutes and constitutional provisions establishing the ballot qualification (and disqualification) requirements are facially clear and have been previously interpreted by state courts. The Court will not need to venture into uncharted waters. Rather, Plaintiffs merely ask the Court to apply existing state law as it has already been interpreted by state courts.

### *The State Law Claims Do Not Substantially Predominate Over the Federal Law Claims*.

Plaintiffs' state law claims do not substantially predominate over the federal claims in this case either. "The substantially predominate standard of § 1367(c)(2) is not satisfied simply because the number of state claims is more than the number of federal claims." *The Arc of The Pikes Peak Region*, 2011 WL 1047222, at *3. State claims substantially predominate only when the federal claims are a mere "appendage" to the state claim. *Gibbs*, 383 U.S. at 726–27 ("[I]f it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals.").

3

State law claims do not predominate where "[t]here is no meaningful difference between the amount of evidence required to present Plaintiffs' state law and federal law claims, nor between the scope of the state and federal claims." *Mabey v. Ray*, No. 4:18-CV-00061-DN-DBP, 2019 WL 962183, at *3 (D. Utah Feb. 4, 2019), *report and recommendation adopted*, No. 4:18-CV-00061-DN-DBP, 2019 WL 955238 (D. Utah Feb. 27, 2019). As in *Maybey*,

> [M]ost, if not all, of the evidence will overlap and the scope appears equal, if not more weighted toward the federal claims. Similarly, Plaintiffs seek only injunctive relief on the state law claims, but seek injunctive relief and damages for their federal claims. The state law claims, therefore, do not predominate regarding the comprehensiveness of the remedies sought.

*Id.* Here, there is complete factual overlap between the federal constitutional and statutory claims and the state constitutional and statutory claims.

An examination of each of the state laws in the Court's Order to Show Cause demonstrates this. The Hatch Act violation and state constitutional separation of powers provision both depend on the same issue: whether an executive director of a department in Utah's executive branch (whose office receives significant federal funds) can run for partisan political office in Utah's legislative branch.

Related state laws are dependent upon interpretation of the federal law: the "little Hatch Act" merely requires that state employees conform with the federal Hatch Act. *See* UTAH CODE ANN. § 63A-17-904(4)(b) (clarifying that the state Personnel Management Act may not be construed to "permit partisan political activity by any employee who is prevented or restricted from engaging in the political activity by the provisions of the federal Hatch Act"). Likewise, Utah's related administrative regulations rely on interpretation of federal law. UTAH ADMIN. CODE R477-9-4(1)(b). Thus, these state law claims are not only identical to the federal Hatch Act claim but are also entirely dependent upon the interpretation of that federal statute.

4

In addition, to rule on the Motion for a Preliminary Injunction, the Court need not go into a deep analysis of the relevant state provisions. Whether UTAH CODE § 20A-1-501 is constitutional as applied is only necessary if the Court agrees with the LG's reading of the statute as prohibiting her from removing Mr. Ferry. This necessarily requires the Court to look at the Election Code as whole.[1] More importantly, if the Court finds that Mr. Ferry's candidacy is violative of the Hatch Act, it can grant a preliminary injunction for that reason alone and need not reach the issue of who is correct about UTAH CODE § 20A-1-501 at this stage. *See, e.g.*, *Planned Parenthood Ass'n of Utah v. Herbert*, 828 F.3d 1245, 1252 (10th Cir. 2016) (granting plaintiff a preliminary injunction where it established a likelihood of success on the merits on two of its three claims).[2]

Likewise, for the purposes of the Motion for Preliminary Injunction, the state and federal constitutional claims are substantially the same.[3] "Despite their dissimilar language, [UTAH CONST. art. I, § 24 (Uniform Operation of Laws) and the federal Equal Protection clause] 'embody the same general principle.'" *Gallivan v. Walker*, 2002 UT 89, ¶¶ 31–32, 54 P.3d 1069 (quoting *Malan v. Lewis*, 693 P.2d 661, 669 (Utah 1984)); *see also Liedtke v. Schettler*, 649 P.2d

---

[1] The Court's "task is to seek the intent of the legislature, not to substitute [the Court's] own wisdom in its stead. To that end, when a statute is silent regarding particular circumstances and [the Court] determine[s] that such a gap was not the intent of the legislature, [the Court] must determine the best rule of law to ensure that the statute is applied uniformly. [Courts] analyze the act in its entirety and harmonize its provisions in accordance with the legislative intent and purpose." *Cox v. Laycock*, 2015 UT 20, ¶ 42, 345 P.3d 689 (footnotes and internal quotation marks omitted).

[2] Even then, courts must "weigh the character and magnitude of the asserted injury . . . against the precise interests put forward by the [state] as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights." *Navajo Nation v. San Juan Cnty.*, 929 F.3d 1270, 1283 (10th Cir. 2019) (internal quotation marks omitted). "This test provides a sliding scale under which the rigorousness of [the] inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens individual rights." *Id.* (internal quotation marks omitted). As discussed on the motion for preliminary injunction, the *Anderson-Burdick* test favors Plaintiffs in requiring Mr. Ferry to be removed from the ballot given his clear ineligibility under federal law and the plain language of the Utah Constitution.

[3] Plaintiffs reserve the right to more fully brief the greater rights and protections that the Utah Constitution provides them beyond the United States Constitution at a later time.

80, 81 n.1 (Utah 1982) (noting that UTAH CONST. art. I, § 24 is "generally considered the equivalent of the Equal Protection Clause of the 14th Amendment, U.S. Constitution"). The importance of equal protection is also emphasized in UTAH CONST. art. I, § 2 (noting the government is "founded on [the people's] authority for their equal protection and benefit").[4]

Together, UTAH CONST. art. I, §§ 1 and 15 protect free speech and association. *See American Bush v. City of S. Salt Lake*, 2006 UT 40, ¶ 20, 140 P.3d 1235. In *Utah Safe to Learn-Safe to Worship Coalition, Inc. v. State*, the Utah Supreme Court considered both federal and state free speech challenges. 2004 UT 32, 94 P.3d 217. There, the court interpreted the state constitution identically to the federal, relying on its conclusion under the federal constitution that freedom of speech was not implicated by the facts of that case. *See id.* ¶ 59. At the preliminary injunction phase, the Court need not delve further.

Likewise, Utah has previously adopted federal applications of Due Process when interpreting UTAH CONST. art. I, § 7. *See, e.g.*, *Jensen ex rel. Jensen v. Cunningham*, 2011 UT 17, ¶ 66, 250 P.3d 465 (applying the federal constitutional standard for when a state constitutional right is "clearly established"). In the election law context, the Utah Supreme Court has clarified that the proper approach is to "apply strict or heightened scrutiny in cases involving fundamental rights sounding in due process." *Count My Vote, Inc. v. Cox*, 2019 UT 60, ¶ 84, 452 P.3d 1109. Because "state due process claims differ from federal due process claims," *Blackmore v. Carlson*, 574 F. Supp. 3d 1012, 1053 (D. Utah 2021), and "the Utah Supreme Court has the prerogative to find that the state due process clause affords more protections," the Court can

---

[4] However, because "Utah's uniform operation of laws provision is at least as exacting and, in some circumstances, more rigorous than the standard applied under the federal constitution," *Gallivan v. Walker*, 2002 UT 89, ¶ 33, 54 P.3d 1069, the Court need not reach whether Defendants have violated this provision standing alone unless it concludes that there is no violation of the federal Equal Protection clause.

"analyze the issue under only federal due process standards" at the preliminary injunction stage. *Evans v. Utah*, 21 F. Supp. 3d 1192, 1202 (D. Utah 2014). Voting is a fundamental right under the First Amendment to the federal constitution, *see, e.g.*, *Reynolds v. Sims*, 377 U.S. 533, 562 (1964) ("[S]ince the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights, any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized."), and a fundamental right under UTAH CONST. art. IV § 2, *see Shields v. Toronto*, 395 P.2d 829, 832 (Utah 1964) ("[T]hese rights are of vital importance both to individual citizens and to the public."). Thus, any analysis related to the fundamental right to vote under the First Amendment will necessarily also cover UTAH CONST. art. IV § 2.

While UTAH CONST. art. I, § 17, protecting the right to free elections, admittedly has no federal counterpart, here too there is already a Utah Supreme Court decision interpreting the provision that the Court can rely upon. *See Anderson v. Cook*, 102 Utah 265, 103 P.2d 278, 285 (1942) (*per curiam*). In addition, Utah's constitutional language is practically identical to provisions in other state constitutions that have been analyzed.[5] *See, e.g.*, *Pennsylvania Democratic Party v. Boockvar*, 238 A.3d 345, 356 (Penn. 2020) (interpreting Pennsylvania's constitution to "mandate[] clearly and unambiguously, and in the broadest possible terms, that *all* elections conducted in this Commonwealth must be 'free and equal,'" and noting that "this clause was 'specifically intended to equalize the power of voters'") (quoting *League of Women*

---

[5] *See generally* "Free and Equal Clauses in State Constitutions," Nat'l Conf. of State Legislatures, Nov. 4, 2019 (last visited September 11, 2022) (noting that "30 states have some form of constitutional requirement that elections be 'free,'" "18 of these states further require that elections be either 'equal' or 'open' in addition to being free," and "15 state constitutions also include language that explicitly protects a citizen's right to vote from improper influence or interference by 'civil or military' powers.") Utah, Pennsylvania, and Missouri are within that 15.

7

*Voters v. Commonwealth*, 178 A.3d 737, 804 (2018) (emphasis in original)); *Weinschenk v. State*, 203 S.W.3d 201, 211 (Mo. 2006) (interpreting Missouri's free elections clause).

"The powers of the government" of the State of Utah are "divided into three distinct departments"—the legislative, executive, and judicial—each within their own distinct powers and domain. UTAH CONST. art. V § 1. While this provision does not explicitly rely on federal law, the concept of separation of powers has been fundamental to our federal system from its inception, upon which Utah's separation of powers provisions are based. *See, e.g.*, THE FEDERALIST NO. 51, 323–24 (G. P. Putnam's Sons ed., 1908) ("[T]he constant aim is to divide and arrange the several offices in such a manner as that each may be a check on the other—that the private interest of every individual may be a sentinel over the public rights. These inventions of prudence cannot be less requisite in the distribution of the supreme powers of the State."); *Buckley v. Valeo*, 424 U.S. 1, 124 (1976) ("The principle of separation of powers was not simply an abstract generalization in the minds of the Framers: it was woven into the document that they drafted in Philadelphia in the summer of 1787."); *Bowsher v. Synar*, 478 U.S. 714, 730 (1986) ("The Framers recognized that . . . structural protections against abuse of power were critical to preserving liberty.").

Utah's "separation of powers doctrine will be violated where the legislative department of government exercises effective control over the function of selection and appointment of judges." *Matheson v. Ferry*, 641 P.2d 674, 677 (Utah 1982). Therefore, whether maintaining a foot in both the executive and the legislative branches—as executive director of DNR while maintaining his candidacy for reelection to the Legislature—violates the doctrine is readily determinable under existing Utah law and federal counterparts.

The analysis required under UTAH CONST. art. VI, § 6 is extremely limited and the Court can easily confine itself to prior interpretations by the Utah Supreme Court, which has previously held that a position with a salary of "$25 per day" was "certainly a civil office of profit." *Romney v. Barlow*, 2 Utah 2d 226, 469 P.2d 497, 499 (Utah 1970). Here too, the Court's analysis of state law on this claim is limited to applying existing precedents from the Utah Supreme Court.

*There are Compelling Reasons to Retain Jurisdiction.*

As for the fourth and final factor, "§ 1367(c)(2)'s authority should be invoked only where there is an important countervailing interest to be served by relegating state claims to the state court." *The Arc of The Pikes Peak Region*, 2011 WL 1047222, at *3 (internal quotation marks omitted). There are also no other compelling reasons for declining jurisdiction here. Rather, the opposite is true—requiring Plaintiffs to refile the same case in state court would cause sufficient delay to ensure voters and Plaintiffs' rights were irreparably harmed because ballots will have gone out. The time sensitive nature of the dispute is an exceptional circumstance that weighs in favor of retaining jurisdiction over the state law claims.

## CONCLUSION

For the reasons set forth above, <u>none</u> of the four factors in § 1367(c)(2) are met here so the Court must retain supplemental jurisdiction. In the alternative, Plaintiffs respectfully request that the Court retain supplemental jurisdiction in its discretion given the compelling and urgent reasons detailed *supra* and in the motion for preliminary injunction.

DATED this 12th day of September, 2022

                                            */s/ David P. Billings*
                                            DAVID P. BILLINGS
                                            FABIAN VANCOTT
                                            *Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of September, 2022, I caused a true and correct copy of the foregoing to be served by email to the following:

>Bradley R. Blackham
>bblackham@agutah.gov
>Jason Dupree
>jdupree@agutah.gov
>*Attorneys for Defendant Deidre M. Henderson, in her Official Capacity as Lieutenant Governor of Utah*
>
>Joel Ferry
>joelmferry@gmail.com
>*Candidate for Utah House District 1 & Acting Director, Utah Department of Natural Resources*

*/s/ David P. Billings*
*Attorney for Plaintiffs*

4876-2339-2818, v. 1